IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WENDELL KEITH WHITE,

    Petitioner,

V.

NATHANIAL QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL
INSTITUTIONS DIVISION,[1]

    Respondent.

§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. H-04-4838

## MEMORANDUM AND ORDER DENYING
## PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

Pending in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254 is Respondent's Answer (Document No. 8) to Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1).  Having considered Respondent's Answer, in which Respondent argues that none of Petitioner's claims have any merit, Petitioner's Traverse thereto (Document No. 14), the claims raised by Petitioner in his Federal Application for Writ of Habeas Corpus, the state court records, and the applicable law, the Court[2] ORDERS, for the reasons set forth below, that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED with prejudice.

---

[1] Effective June 1, 2006, Nathanial Quarterman became the Director of the Texas Department of Criminal Justice, "Correctional Institutions Division" (formerly the "Institutional Division"). Pursuant to FED. R. CIV. P. 25(d)(1), Quarterman is substituted as Respondent in this case.

[2] On May 14, 2005, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings.  *See* Document No. 12.

I.   **Introduction and Procedural History**

Wendell Keith White ("White") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of his conviction for murder and aggravated assault.  White was charged by Indictment on July 2, 1998, with the murder of Latasha Vasquez and the attempted murder of Tracey Johnson in the 232nd District Court of Harris County, Texas, Cause Nos. 780,178 & 780,179.  White pled not guilty and was tried by a jury, which found him guilty of the murder of Vasquez, and guilty of the lesser included offense of aggravated assault of Johnson.  The jury then sentenced White to forty years incarceration on the murder offense and twenty years incarceration on the aggravated assault offense.

White appealed both convictions to Texas' First Court of Appeals, which affirmed each conviction on June 1, 2000, in an unpublished opinion.  *White v. State*, 01-99-00424-CR and 01-99-00425-CR.  White's petition(s) for discretionary review were refused by the Texas Court of Criminal Appeals on September 27, 2000.  White then, on December 5, 2001, filed two state applications for writ of habeas corpus, challenging each of his convictions.  In a consolidated proceeding, the state trial court recommended to the Texas Court of Criminal Appeals that relief be granted to White on his ineffective assistance of counsel claim.  The Texas Court of Criminal Appeals, however, rejected that recommendation and denied White's state applications for writ of habeas corpus in a written decision issued on September 29, 2004.  *Ex Parte White*, 160 S.W.3d 46 (Tex.Crim.App. 2004).

This § 2254 proceeding, in which White challenges his murder conviction, and a companion § 2254 proceeding White filed to challenge his aggravated assault conviction, Civil Action No. 04-4839, followed.  White's related § 2254 proceeding has been consolidated herein.  Respondent has

filed a substantive Answer (Document No. 8) to Petitioner's claims for relief, to which Petitioner

has filed a Traverse in response (Document No. 14).  This § 2254 proceeding is ripe for ruling.


## II.   **Factual Background**

The factual background, as set forth by the Texas Court of Appeals in its decision affirming

White's convictions, is as follows:

> The record reflects that [White] went to a bar around 10:45 p.m. to have a drink and play pool.  The aggravated assault victim, Tracey Johnson, was playing in a pool tournament.  Johnson complained that [White] was verbally harassing her. [White] later used Johnson's pool cue without permission.  After Johnson confronted him, [White] apologized and bought her a drink.  At approximately 1:45 a.m., shortly before the bar closed, [White] came up behind Johnson, grabbed her breasts, and rubbed against her.  Johnson yelled at [White], and one of her friends pulled her away.

> [White] went outside and got in his pickup truck, which was parked in front of a restaurant located at the front of the bar's parking lot.  Marco, one of Johnson's friends, followed [White] to [White's] truck and punched [White] in the face, knocking off [White's] glasses.  After Marco left, [White] drove his truck forward towards the restaurant, hitting a planter box. [White] then turned his truck around and drove back towards the bar, where he hit Johnson.

> A crowd gathered around [White's] truck, yelling to him that Johnson was underneath the truck. [White] then accelerated, running over both Johnson and the murder victim, Latasha Vasquez. [White] backed up his truck, again running over Vasquez, and sped away from the scene.  Two of the bar patrons followed [White] to his house and called the police.  Vasquez died as a result of her injuries, and Johnson suffered serious injuries.

> [White] was indicted for murder in cause number 780,178 and attempted murder in cause number 780,179.  At trial, the trial court granted, over objection, the State's request that cause number 780,179 be submitted to the jury on both attempted murder and the lesser included offense of aggravated assault.  The jury acquitted [White] of the attempted murder of Johnson, but instead convicted him of aggravated assault.

*White v. State,* No. 01-99-00424-CR and 01-99-00425-CR at 2-3.  In rejecting the sufficiency of the evidence claims White raised in his direct appeal, the Court of Appeals wrote:

> We hold there is legally and factually sufficient evidence to support [White's] convictions.  Although [White] is nearsighted, there is testimony in the record that he was wearing his glasses at the time he ran over the victims.  There is also testimony that [White's] truck was parked near an exit away from the bar, but [White] nonetheless drove back towards the bar rather than immediately leave.  Finally, there is evidence that [White] "revved" his engine before running over both victims, notwithstanding the fact that the crowd was yelling to him that Johnson was under his truck.  It was within the jury's prerogative to infer [White's] evil intent from the evidence presented, and we will not disturb the verdicts.  *See Parrish v. State*, 647 S.W.2d 8, 10-11 (Tex. App.–Houston [14[th] Dist] 1982, no pet.) (quoting *Duhon v. State*, 125 S.W.2d 550, 552 (Tex. Crim. App. 1939)) (intent to kill may be inferred from manner in which defendant drove car).

*Id*. at 5.

## III.    Claims

In his § 2254 application, White sets forth the following ineffective assistance of counsel claims:

1.    that his trial counsel was ineffective at the guilt-innocence stage for: (a) failing to file a motion in limine seeking the exclusion of, and/or failing to object to, the opinion testimony of two officers, Nita Corman and Bob King, that Vasquez' death was not an accident; (b) failing to file a motion in limine seeking the exclusion of, and/or failing to object to, evidence that Vasquez was pregnant at the time of her death; (c) opening the door to evidence that White failed to give police an exculpatory version of the events that led to the death of Vasquez; and (d) failing to seek a jury instruction on the lesser included offense of manslaughter and negligent homicide; and

2.    that his trial counsel was ineffective at sentencing for failing to object to the prosecutor's argument that White showed no remorse for the offense during the testimony of Vasquez' family members.

Each of these claims was raised by Petitioner in his state application for writ of habeas corpus, and each was rejected by the Texas Court of Criminal Appeals on the merits.

4

**IV.**   <u>**Standard of Review**</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).  A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts

of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000)." *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. granted in part,* 124 S.Ct. 46 (2003).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford v. Visciotti*, 534 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The

6

state court's application must have been 'objectively unreasonable.'" (citations omitted).  Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

## IV.   Discussion

The exact ineffective assistance of counsel claims White raises herein were raised by White in his state application for writ of habeas corpus.[3]  The state trial court, upon consideration of White's claims, recommended to the Texas Court of Criminal Appeals that White be granted relief on his claims.  In particular, the state trial court made the following findings and conclusions:

> Ken and Judy Mingledofff represented [White] at trial, Their performance was deficient in the following ways:
>
> a.   The defense failed to object to the opinion testimony of two police officers that applicant acted intentionally when he drove his pickup truck over the two women.  Accident investigator Nita Corman testified that she determined from witness interviews that [White] "had deliberately run over the young ladies."  4 R.R. 287.  Homicide detective Bob King determined from witness statements that he had been sent to a "murder scene" and that [White] had "intentionally committed murder."  4 R.R. 299, 319.
>
> b.   The defense failed to object to evidence of and prosecution argument in the guilt phase emphasizing that Latasha Vasquez was pregnant.  Her pregnancy and the death of the fetus were irrelevant to the issue of guilt and highly prejudicial.
>
> c.   The defense asked [White] on direct examination about his failure to tell his exculpatory version of the events to the police after his arrest.  This testimony did not advance the defensive theory of lack of intent but did open the door

---

[3] This § 2254 proceeding was filed by counsel for White.  The same attorney filed White's state application for writ of habeas corpus.

to comment on [White's] post-arrest silence demonstrated his intent and his lack of credibility.  There was no objection.

d.      The failure to request any lesser included offenses. [White] wanted to adopt an all-or-nothing strategy.  Since the only contested issue at trial was intent, such a strategy was unreasonable, and the defense should have requested that lesser charges be submitted for the jury's consideration.

e.      In the punishment phase, the defense failed to object to the prosecutor's argument that [White] showed no remorse during victim-impact testimony. Defense counsel's argument that "everybody in this courtroom" had tears in their eyes during that testimony was hyperbole and did not invite the prosecutor's argument that [White] "didn't even look like he cared during that testimony."

The most significant error was the invitation to comment on [White's] post-arrest silence, and the State fully exploited it.  Given these circumstances, there is a reasonable probability that the outcome of the case would have been different but for counsel's error.  The other above-listed errors further undermine confidence in the outcome of the case.

*Ex Parte White*, Application No. 56,134-02 at 1982-1984.  The Texas Court of Criminal Appeals, in its written decision, while not rejecting any factual findings made by the state trial court, did reject the state trial court's determination that trial counsel's performance prejudiced White and likewise rejected the state trial court's recommendation that White be granted relief.  In so doing, the Texas Court of Criminal Appeals wrote:

We disagree with the convicting court's recommendation and deny relief because the record does not support the convicting court's conclusion that a probability existed that a different outcome would have occurred but for counsel's deficient performance.

*Ex Parte White*, 160 S.W.3d at 49.  Given that ruling, the determination to be made herein is whether the Texas Court of Criminal Appeals' rejection of White's ineffectiveness claims was an

"unreasonable" application of clearly established federal law, as determined by the Supreme Court of the United States.[4]

Ineffective assistance of counsel claims are generally measured by reference to the clearly established federal law set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of

---

[4] The Texas Court of Criminal Appeals did not reject any of the state trial court's purely factual findings. Instead, it took the state court's purely factual findings and reached its own, contrary, determination on the mixed questions of law and fact. Therefore, this is not a case in which the state trial courts' factual findings need be considered or reconciled with those of the Texas Court of Criminal Appeals. *See Micheaux v. Collins*, 944 F.2d 231 (5th Cir. 1991); *Craker v. Procunier*, 756 F.2d 1212 (5th Cir. 1985).

competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003); *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 2462 (2005) ("hindsight is discounted").

The Texas Court of Criminal Appeals, in rejecting White's ineffectiveness claims, did not make an independent deficiency determination on each allegation of ineffectiveness. Instead, the Texas Court of Criminal Appeals assumed, without deciding, that counsel's performance was

deficient in certain respects and then concluded, independently, that such deficiency did not prejudice White or the outcome of his trial.  With respect to White's claim that counsel was ineffective for failing to object to the opinion testimony of Officers Corman and King, the Texas Court of Criminal Appeals wrote:

> Even if we were to assume that counsel should have objected to this testimony, we conclude that the record does not support the conclusion that the applicant met the second prong of the *Strickland* test.  There was ample evidence that the applicant had run over the victims intentionally.  It is unlikely, in the face of all the evidence that the jury heard about the events of the evening, that the jury would have reached a different conclusion in the absence of Corman's and King's testimony.  We cannot say that there is a probability that the outcome would have been different if counsel had objected to the testimony.

*Ex Parte White*, 160 S.W.3d at 53-54.  As for White's claim that counsel was ineffective for failing to exclude evidence that Vasquez was pregnant at the time of her death, the Texas Court of Criminal Appeals wrote:

> It is unlikely that the jury's decision regarding the applicant's guilt would have been different even if the trial court had sustained an objection by counsel to the admission of testimony about the pregnancy.  We cannot say that there is a probability of a change in the outcome if counsel had objected to the testimony about the victim's pregnancy.

*Id.* at 55.  With respect to White's claim that counsel was ineffective for opening the door to his post arrest silence, the Texas Court of Criminal Appeals wrote:

> . . . . We will assume without deciding that trial counsels' performance was deficient for asking about the applicant's post-arrest silence and opening the door to the State's cross examination on this point.  We conclude that the record does not support the conclusion that a reasonable probability exists that the result would have been different but for counsels' actions because (1) ample evidence existed in the record from which a rational jury could conclude that the applicant intentionally ran over the victims; and (2) before the applicant testified, the theory of the case had already been undermined by testimony that the applicant had told one of the officers that he had been home all night.

The testimony taken during the trial was ample for a rational jury to conclude that the applicant intentionally ran over the victims. There was testimony that the applicant, although parked near the exit, drove back toward the bar where the victims were standing. A witness testified that the applicant revved his engine before running over the victims even though other bar patrons were yelling that Johnson was under his truck. A witness also testified that the applicant was actually wearing his glasses when he ran over the victims.

Also, to the extent that the applicant's theory of the case was damaged by the question about the applicant's post-arrest silence, this theory had already been undermined by an officer's testimony that the applicant had told him that he had been home all evening. There was evidence that the applicant did not remain silent. And, when he did speak, he told the police that he had been home all night and not that he had narrowly escaped the attack of an angry mob.

We conclude that the record does not support the conclusion that there was a probability of a different outcome had trial counsel not opened the door to testimony about the applicant's post-arrest silence.

*Id.* at 51-52. As for White's claim that counsel was ineffective for failing to seek a jury instruction on the lesser included offense of manslaughter and negligent homicide, the Texas Court of Criminal appeals concluded:

In its findings of fact, the convicting court found that, although the applicant wanted to adopt an all-or-nothing trial strategy, such a strategy was unreasonable and trial counsel should have requested jury instructions on the lesser-included offenses. However, it was the applicant, in not wanting to request the instructions, that sought the all-or-nothing strategy in the case. Just because another attorney would have pursued another strategy does not make this strategy unreasonable, especially in light of the applicant's decision. We conclude that counsel were not ineffective for failing to request an instruction that the applicant did not want.

*Id.* at 55. Finally, with respect to White's claim that counsel was ineffective for failing to object to the prosecutor's argument that White showed no remorse for the offense during the testimony of Vasquez' family members, the Texas Court of Criminal Appeals wrote:

Although trial counsel's performance may have fallen below the objective standard of reasonableness in failing to object to the prosecutor's argument, the record does not support a conclusion that, if counsel had objected to this argument,

12

there is a probability that the outcome of the proceeding would have been different. The statement about which the applicant complains was one comment in the middle of an argument that predominantly focused on the applicant's actions on the night of the offense and the applicant's prior convictions.

*Id.* at 55.

A.    **Officers' opinion testimony**

The Texas Court of Criminal Appeals' rejection of White's claim that counsel was ineffective for failing to exclude the opinion testimony of two officers is not contrary to or an unreasonable application of *Strickland*.  In particular, the Texas Court of Criminal Appeals' determination that White was not prejudiced by the admission of the officers' opinion testimony is not, on this record, objectively unreasonable.

The record shows that two officers testified at trial that they went to the scene of the offense and determined, after speaking to several witnesses, that the injuries suffered by Vasquez and Johnson were not the result of an accident, but were instead the result of White's intentional conduct, which constituted, and supported a charge of, murder.  While such opinion testimony by the officers regarding White's mental state and the appropriate charge was admittedly objectionable under Texas law, counsel's failure to object or otherwise exclude such testimony did not prejudice White.  Both officers made it clear during their testimony that their assessment of the offense was based on their conversations with witnesses at the scene.  It therefore cannot be said that the officers' opinion testimony somehow bolstered the testimony and credibility of the eyewitnesses who testified at trial; rather, it was the eyewitnesses' testimony which affected the officers' assessment.  Moreover, because it was the eyewitnesses' testimony that was key to both the charges brought against White, and ultimately the jury's determination of his guilt, not the opinion testimony of the two law

13

enforcement officers, the Texas Court of Criminal Appeals' determination that White was not prejudiced, within the meaning of *Strickland*, by counsel's failure to exclude such opinion testimony, was not objectively unreasonable. Accordingly, under § 2254(d), no relief is available on this ineffectiveness claim.

### B.    Vasquez' pregnancy

The Texas Court of Criminal Appeals' rejection of White's claim that counsel was ineffective for failing to object to the evidence and mention of Vasquez' pregnancy is not contrary to or an unreasonable application of *Strickland*.  In particular, the Texas Court of Criminal Appeals' determination that White was not prejudiced  by the evidence and mention of Vasquez' pregnancy is not, on this record, objectively unreasonable.

The record shows that medical evidence and testimony was offered regarding the cause of Vasquez' death.  In connection therewith, it was revealed that Vasquez was pregnant at the time of her death.  While evidence of Vasquez' pregnancy was not relevant to the charges against White, and while Texas law would have supported the exclusion of such evidence, the Texas Court of Criminal Appeals' determination that such evidence did not affect the outcome of the trial, and therefore did not prejudice White within the meaning of *Strickland* is not unreasonable. As discussed by the Texas Court of Criminal Appeals in its written decision, the outcome of the case was dependent upon the jury's determination of White's intent – not on whether Vasquez was, or was not, pregnant on the date of the offense.  Therefore, despite the fact that evidence of Vasquez' pregnancy was not relevant, and was potentially inflammatory, a reasonable probability does not exist, given the evidence in the record regarding White's intent, that the result of the trial would have

14

been different in the absence of such evidence.  Accordingly, under § 2254(d), no relief is warranted on this claim.

### C.    White's post-arrest silence

The Texas Court of Criminal Appeals' rejection of White's claim that counsel was ineffective for opening the door to evidence of White's post-arrest silence is not contrary to or an unreasonable application of *Strickland*.   In particular, the Texas Court of Criminal Appeals' determination that White was not prejudiced by the admission of evidence of his post-arrest silence is not, on this record, objectively unreasonable.

The record shows that White's defense strategy was to convince the jury that the injuries to Vasquez and Johnson were the result of an accident.  A major obstacle to that defense, however, was the testimony by Houston Police Officer Raymond Cibulski that White had lied about his whereabouts on the night of the offense.  Cibulski testified during the State's case-in-chief, that White stated to police, following his arrest, that he had been at home all night.  Cibulski testified as follows:

> Q:    Okay.  When you first made contact with Mr. Wendell White what occurred?
>
> A:    I asked him to step out of the vehicle and he asked me what's going on and I told him that we were investigating a crime scene and –
>
> Q:    Did he respond to you in anyway at that point?
>
> A:    He did make a comment.  Told me that he didn't know what was going on, that he had been sleeping in his house all night long when the Fort Bend County deputies pulled him out of the house.

S.F. Vol. 4, at 220; *Ex Parte White*, Application No. 56,134-02 at 927.  In an apparent attempt to discredit that testimony and refute the State's evidence that he had lied to the police about his

whereabouts on the night of the offense, White's counsel questioned him regarding his post-arrest silence, as follows:

> Q:      You talking to any other officers before you're driven downtown?
>
> A:      No.  I didn't talk to any other officers, no.
>
> Q:      When you leave to go downtown had you given your version of this story to anybody?  Had you told them what happened at Koach's?
>
> A:      No.
>
> Q:      Did anybody ask you?
>
> A:      No.

S.F. Vol. 5 at 476-77; *Ex Parte White*, Application No. 56,134-02 at 1183-84.  That questioning, in turn, led to extensive questioning by the prosecution about White's post-arrest silence, and his failure to provide the police with an explanation of the events as an accident.

While the evidence regarding White's post-arrest silence was potentially damaging, and did undermine White's accident defense, that defense had already been significantly, if not irreparably, damaged by the testimony of Officer Cibulski that White had claimed, following his arrest, to have been  home all night.  As described by the state courts, the only contested issue in the case was White's intent.  In addition, the issue of intent came down to the jury's weighing of the testimony of the eyewitnesses and the testimony of White.  White could not have challenged the testimony of Cibulski about his post-arrest statements without revealing, in one way or another, his post-arrest silence, and his failure to explain the incident as an accident.

Based on a review of the record as a whole, the evidence in the record of White's intent at the time of the offense, and the evidence that White stated to police following his arrest that he had

been at home at the time of the offense, the Texas Court of Criminal Appeals' rejection of this ineffectiveness claim on the basis that there is no reasonable probability that the result of the trial would have been different in the absence of counsel opening the door to White's post-arrest silence, is not objectively unreasonable. Therefore, under § 2254(d), no relief is available on this ineffectiveness claim.

### D.    Lesser-included offense instructions

The Texas Court of Criminal Appeals' rejection of White's claim that counsel was ineffective for failing to request lesser included offense instructions is not contrary to or an unreasonable application of *Strickland*.    In particular, the Texas Court of Criminal Appeals' determination that counsel was not deficient in this regard because it was White who insisted on an all-or-nothing strategy is not, on this record, objectively unreasonable.

Here, the evidence shows that White decided, following discussions with his counsel, that he did not want to present the jury with option of fining him guilty of the any lesser included offense. That decision is clearly reflected in the record though White's testimony on the issue:

> Q:    Mr. White you understand and we've discussed the jury charge and it includes murder of Latasha Vasquez and attempted with Tracey Johnson. We have explained to you that there are lesser included charges to be added to the jury instructions and we've explained yo you the various elements involved in raising those issues with the jury have we?
>
> A:    Yes.
>
> Q:    And do you agree and have you thought about that and decided that you are not asking and we as a collective team are not asking the Court to add any lesser included charges?
>
> A:    That is correct.

Q:      And you understand if the jury decides you're guilty of some bad act the only thing they have to choose is murder and attempted murder.  You understand that?

A:      That's correct.

Q:      And that's still your decision that you do not wish to add lesser included?

A:      Yes.

S.F. Vol. 5 at 432-33; *Ex Parte White*, Application No. 56,134-02 at 139-1140;.  That decision is further reflected in the affidavit counsel filed in the state habeas proceeding, in which counsel explained: "We did not request an instruction on the lesser-included offenses of manslaughter and negligent homicide in the murder case.  We discussed the availability of these instructions with Mr. White and deferred to his decision not to request them." *Ex Parte White,* Application No. 56,134-02 at 34.    Because the record clearly reflects that it was White's decision, a decision which appears to have been knowingly and voluntarily made, not to seek jury instructions on the lesser included offenses, and because counsel generally will not be found ineffective for following the wishes and decisions of his client, *see Autry v. McKaskle*, 727 F.2d 358, 361 (5th Cir. 1984), the Texas Court of Criminal Appeals rejection of this ineffectiveness claim was not objectively unreasonable. Therefore, under § 2254(d), no relief is available on this claim.

> **E.      Lack of remorse argument**

The Texas Court of Criminal Appeals' rejection of White's claim that counsel was ineffective for failing to object to the prosecutor's comments and argument on his lack of remorse is not contrary to or an unreasonable application of *Strickland*.  In particular, the Texas Court of Criminal Appeals' determination that White was not prejudiced by such comments and argument is not, on this record, objectively unreasonable.

The record shows that the argument and comments about which White complains were made during the prosecutor's closing arguments at the punishment stage. Such argument and comments made up very little of the prosecutor's argument, and were neither a primary or secondary focus of the overall argument for a punishment of life imprisonment. While such comments were objectionable, the fact that White showed no remorse for his actions while Vasquez' family members were testifying is something the members of the jury could have observed and ascertained for themselves. Therefore, upon this record, where the jury assessed a sentence of forty years, far less than the life sentence the prosecutor argued for, and where the comments about which White complains were brief and isolated, it cannot be said that such argument or comments affected the sentence the jury assessed. Accordingly, the Texas Court of Criminal Appeals' rejection of this ineffectiveness claim was not objectively unreasonable, and no relief is available on this claim under § 2254(d).

## VI.   Conclusion and Order

Based on the foregoing, and the conclusion that the Texas Court of Criminal Appeals' rejection of Petitioner's ineffective assistance of counsel claims was not based on an unreasonable application of *Strickland*, it is

ORDERED that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED WITH PREJUDICE. However, it is further

ORDERED that a Certificate of Appealability is GRANTED. A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing

19

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001). When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, given the differing assessments by the state trial court and the Texas Court of Criminal Appeals on the prejudice prong of White's ineffectiveness claim, "reasonable jurists", even at this stage, may find this Court's assessment of White's claim that counsel was ineffective at the guilty innocence stage of the trial for opening the door to his post-arrest silence, to be debatable or wrong. Therefore, a certificate of appealability shall issue on that aspect of White's ineffectiveness claim.

Signed at Houston, Texas, this 31st day of July, 2006.

Frances H. Stacy
United States Magistrate Judge